JS 44   (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Conestoga Wood Specialties Corp., a PA Corporation; Norman Hahn; Norman Lemar Hahn; and Anthony H. Hahn.

**(b)** County of Residence of First Listed Plaintiff   Lancaster
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

See Attached

**DEFENDANTS**
Kathleen Sebelius, in her official capacity as Secretary of the United States Department of Health and Human Services, et al.
See Attached for full list of Defendants
County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | of Property 21 USC 881 | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 690 Other | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 367 Health Care/ | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Pharmaceutical | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Personal Injury | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | Product Liability | ☐ 710 Fair Labor Standards | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 368 Asbestos Personal | Act | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Injury Product | ☐ 720 Labor/Mgmt. Relations | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | Liability | ☐ 740 Railway Labor Act | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | **PERSONAL PROPERTY** | ☐ 751 Family and Medical | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 370 Other Fraud | Leave Act | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | ☐ 371 Truth in Lending | ☐ 790 Other Labor Litigation | Act |
| | Med. Malpractice | ☐ 380 Other Personal | ☐ 791 Empl. Ret. Inc. | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | Property Damage | Security Act | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | ☐ 385 Property Damage | | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Product Liability | **FEDERAL TAX SUITS** | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **PRISONER PETITIONS** | ☐ 870 Taxes (U.S. Plaintiff | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 510 Motions to Vacate | or Defendant) | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | Sentence | ☐ 871 IRS—Third Party | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | **Habeas Corpus:** | 26 USC 7609 | |
| | Employment | ☐ 530 General | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | |
| | Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | |
| | | ☐ 555 Prison Condition | Alien Detainee | |
| | | ☐ 560 Civil Detainee - | (Prisoner Petition) | |
| | | Conditions of | ☐ 465 Other Immigration | |
| | | Confinement | Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district *(specify)*
- ☐ 6   Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 2000bb; 1st and 5th Amend. U.S. Const., 5 USC 701
Brief description of cause:
PPACA violated religious beliefs of Plaintiffs

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions)*:
JUDGE ___   DOCKET NUMBER ___

DATE   12/04/12

SIGNATURE OF ATTORNEY OF RECORD   *Charles W. Procter III*

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

# Civil Cover Sheet Continued

## I. PLAINTIFFS

(c) Attorneys (*Firm Name, Address, and Telephone Number*)

Charles W. Proctor, III, Esquire
Attorney ID # 23266
Law Offices of Proctor, Lindsay & Dixon
1204 Baltimore Pike
Suite 200
Chadds Ford, PA 19317
610.361.8600
Fax 610.361.8843

Randall L. Wenger
Attorney ID # 86537
Independence Law Center
23 North Front Street
Harrisburg, PA 17101
717.545.0600
Fax 717.545.8107

## DEFENDANTS

KATHLEEN SEBELIUS, in her official capacity as Secretary of the United States Department of Health and Human Services; HILDA SOLIS, in her official capacity as Secretary of the United States Department of Labor; TIMOTHY GEITHNER, in his official capacity as Secretary of the United States Department of the Treasury; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES DEPARTMENT OF LABOR; UNITED STATES DEPARTMENT OF THE TREASURY.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Civil Action No. _____

CONESTOGA WOOD SPECIALITIES CORPORATION, a PA Corporation;
NORMAN HAHN;
NORMAN LEMAR HAHN; and
ANTHONY H. HAHN

      Plaintiffs,

v.

KATHLEEN SEBELIUS, in her official capacity as
Secretary of the United States Department of Health and Human Services;
HILDA SOLIS, in her official capacity as
Secretary of the United States Department of Labor;
TIMOTHY GEITHNER, in his official capacity as
Secretary of the United States Department of the Treasury;
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES;
UNITED STATES DEPARTMENT OF LABOR; and
UNITED STATES DEPARTMENT OF THE TREASURY;

      Defendants.

---

## VERIFIED COMPLAINT

---

Plaintiffs, Conestoga Wood Specialties Corporation, a Pennsylvania corporation, Norman

Hahn, Norman Lemar Hahn, and Anthony H. Hahn (herein "Conestoga" or collectively, with the

1

Hahns, the "Plaintiffs") by and through their attorneys, Charles W. Proctor, III, and Randall L. Wenger, state as follows:

## NATURE OF THE CASE

1.      In this action, the Plaintiffs seek declaratory and injunctive relief for the Defendants' violations of the Religious Freedom Restoration Act 42 U.S.C. § 2000bb *et seq.* (RFRA), the First and Fifth Amendments to the United States Constitution, and the Administrative Procedure Act, 5 U.S.C. § 701, et seq. (APA), by Defendants' actions in implementing the Patient Protection and Affordable Care Act of 2010 (Pub. L. 111-148 (March 23, 2010), and Pub. L. 111-152 (March 30, 2010) (hereinafter "PPACA"), in ways that coerce the Plaintiffs and thousands of other conscientious individuals and entities and to engage in acts they consider sinful and immoral in violation of their most deeply held religious beliefs.

2.      Plaintiffs Norman Hahn, Norman Lemar Hahn and Anthony H. Hahn, (hereinafter "the Hahns") are practicing and believing Christians.  They own and operate Conestoga Wood Specialties Corporation, a Pennsylvania corporation, located at 245 Reading Road, East Earl, PA 17519 (hereinafter "Conestoga"),  a wood cabinet and specialty products manufacturer, and they seek to operate Conestoga in a manner that reflects their sincerely held religious beliefs.  The Hahns, based upon these sincerely held religious beliefs as formed by the moral teachings of their Mennonite Christian beliefs, believe that God requires respect for the sanctity of human life.

3.      Applying this religious faith and the moral teachings of the Mennonite faith, the Hahns have concluded that it would be sinful and immoral for them to intentionally participate in, pay for, facilitate, or otherwise support any contraception with an abortifacient effect through

2

health insurance coverage they offer at Conestoga. As a consequence, the Hahns provide health insurance benefits to their employees that omits such coverage of abortifacient drugs. The Hahns' plan renews each year on January 1, the next renewal date thus occurring on January 1, 2013, creating the very real potential for harm to the Plaintiff's and their sincerely held religious beliefs if forced to include such coverage.

4.     With full knowledge that many religious citizens hold the same or similar beliefs, on February 15, 2012 the Defendants finalized rules through the Departments of HHS, Labor and Treasury (those rules collectively referred to hereinafter as the "Preventive Services Mandate" or the "Mandate"[1]) that force Plaintiffs to pay for and otherwise facilitate the insurance coverage and use of contraception with an abortifacient effect and related education and counseling. This Mandate applies to Plaintiffs solely because they wish to operate their business in the United States of America.

---

[1] The Mandate consists of a conglomerate of authorities, including: "Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act," 77 Fed. Reg. 8725–30 (Feb. 15, 2012); the prior interim final rule found at 76 Fed. Reg. 46621–26 (Aug. 3, 2011) which the Feb. 15 rule adopted "without change"; the guidelines by Defendant HHS's Health Resources and Services Administration (HRSA), http://www.hrsa.gov/womensguidelines/, mandating that health plans include no-cost-sharing coverage of "All Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity" as part of required women's "preventive care"; regulations issued by Defendants in 2010 directing HRSA to develop those guidelines, 75 Fed. Reg. 41726 (July 19, 2010); the statutory authority found in 42 U.S.C. § 300gg-13(a)(4) requiring unspecified preventive health services generally, to the extent Defendants have used it to mandate coverage to which Plaintiffs and other employers have religious objections; penalties existing throughout the United States Code for noncompliance with these requirements; and other provisions of PPACA or its implementing regulations that affect exemptions or other aspects of the Mandate.

5.      Similarly to other religious groups and entities organized by people of faith, the Hahns believe that compliance with Defendants' Mandate would require them to violate their deeply held religious beliefs as exemplified by the moral teachings of the Mennonite Church. The Mandate illegally and unconstitutionally coerces the Plaintiffs to violate their sincerely held religious beliefs under threat of heavy fines and penalties. The Mandate also forces the Plaintiffs to fund government dictated speech that is directly at odds with the religious ethics derived from their deeply held religious beliefs and the moral teachings of the Mennonite Faith that they strive to embody in their business. Defendants' coercion tramples on the freedom of conscience of Plaintiffs and millions of other Americans to abide by their religious convictions, to comply with moral imperatives they believe are decreed by God Himself, and to contribute to society through their business in a way that is consistent with their religious ethics, deeply held religious beliefs, and the moral teachings of the Mennonite Church.

6.      Defendants' refusal to accommodate the conscience of the Plaintiffs is highly selective. PPACA exempts a variety of health plans from the Mandate, and upon information and belief the government has provided thousands of exemptions from the PPACA for various entities such as large corporations.  But Defendants' Mandate does not exempt Plaintiffs' plan or those of many other religious Americans.

7.      Defendants' actions violate the Plaintiffs' right freely to exercise religion, protected by the Religious Freedom Restoration Act and the Religion Clauses of the First Amendment to the United States Constitution.

8.     Defendants' actions also violate the Plaintiffs' right to the freedom of speech, as secured by the Free Speech Clause of the First Amendment to the United States Constitution, and their due process rights secured by the Fifth Amendment to the United States Constitution.

9.     Additionally, Defendants violated the Administrative Procedure Act, 5 U.S.C. § 553, by imposing the Mandate without prior notice or public comment, and for other reasons.

10.     Plaintiffs are faced with imminent harm due to Defendants' Mandate. The Mandate by its terms forces Plaintiffs to obtain and pay for insurance coverage of the objectionable items in their January 1, 2013 plan. Plaintiffs therefore will suffer irreparable harm on or before January 1, 2013, unless the Court enters declaratory and injunctive relief to protect Plaintiffs from Defendants' deliberate attack on their consciences and religious freedoms which would result from forced compliance with the Mandate.

## IDENTIFICATION OF PARTIES

11.     Conestoga Wood Specialties Corporation, a Pennsylvania corporation (herein "Conestoga"), doing business at 245 Reading Road, East Earl, Pennsylvania, is a family business that manufactures wood cabinets and wood specialty products.  It is owned and operated as a privately held corporation principally by Plaintiffs Norman Hahn, Norman Lemar Hahn, and Anthony H. Hahn, the founder and his sons respectively, who currently manage the business. Together they possess effective ownership of and management responsibility for Conestoga.

12.     Plaintiff Norman Hahn, shareholder of Plaintiff Conestoga is a member of the Conestoga Board of Directors, and serves as Vice President of the Board.

13.     Plaintiff Norman Lemar Hahn is a shareholder of Plaintiff Conestoga and is Chairman of the Board of Directors.

14.     Plaintiff Anthony H. Hahn is a shareholder of Plaintiff Conestoga and is a member of the Board of Directors and President and Chief Executive Officer.

15.     By virtue of their ownership, directorship and officer positions, the Hahn's are responsible for implementing Conestoga's compliance with Defendants' Mandate.

16.     Defendants are appointed officials of the United States government and United States Executive Branch agencies responsible for issuing and enforcing the Mandate.

17.     Defendant Kathleen Sebelius is the Secretary of the United States Department of Health and Human Services (HHS).  In this capacity, she has responsibility for the operation and management of HHS.  Sebelius is sued in her official capacity only.

18.     Defendant HHS is an executive agency of the United States government and is responsible for the promulgation, administration and enforcement of the Mandate.

19.     Defendant Hilda Solis is the Secretary of the United States Department of Labor. In this capacity, she has responsibility for the operation and management of the Department of Labor.  Solis is sued in her official capacity only.

20.     Defendant Department of Labor is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

21.     Defendant Timothy Geithner is the Secretary of the Department of the Treasury. In this capacity, he has responsibility for the operation and management of the Department. Geithner is sued in his official capacity only.

22.     Defendant Department of Treasury is an executive agency of the United States government and is responsible for the promulgation, administration, and enforcement of the Mandate.

## JURISDICTION AND VENUE

23.     This action arises under the Constitution and laws of the United States.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1361, jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 & 2202, 42 U.S.C. § 2000bb-1, 5 U.S.C. § 702, and Fed. R. Civ. P. 65, and to award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and 42 U.S.C. § 1988.

24.     Venue lies in this district pursuant to 28 U.S.C. § 1391(e).  A substantial part of the events or omissions giving rise to the claim occurred in this district, and the Plaintiffs are located in this district.

## FACTUAL ALLEGATIONS

### I.     The Hahns' Religious Beliefs and Operation of Conestoga

25.     The Hahns are practicing and believing Mennonite Christians.

26.     They strive to follow Mennonite ethical beliefs and religious and moral teachings throughout their lives, including in their operation of Conestoga.

27.     The Hahns sincerely believe that the Mennonite faith does not allow them to violate Mennonite religious and moral teachings in their decisions operating Conestoga.  They believe that according to the Mennonite faith their operation of Conestoga must be guided by ethical social principles and Mennonite religious and moral teachings, that the adherence of

7

their business practice according to such Mennonite ethics and religious and moral teachings is a genuine calling from God, that their Mennonite faith prohibits them from separating their religious beliefs from their daily business practice, and that their Mennonite faith requires them to integrate the gifts of the spiritual life, the virtues, morals, and ethical and social principles of Mennonite teaching into their life and work.

28.    The Mennonite Church teaches that taking of life which includes anything that terminates a fertilized embryo is intrinsic evil and a sin against God to which they are held accountable. Therefore, abortion and any abortifacient contraception that may cause an abortion is equally objectionable to the Plaintiff.

29.    As a matter of religious faith the Hahns believe that these Mennonite teachings are among the religious ethical teachings they must follow throughout their lives including in their business practice.

30.    Consequently, the Hahns believe that it would be immoral and sinful for them to intentionally participate in, pay for, facilitate, or otherwise support abortifacient drugs, contraception with an abortifacient effect, and related education and counseling, as would be required by the Mandate, through their inclusion in health insurance coverage offered by Conestoga.

31.    Conestoga's mission statement includes the commitment that "We operate in a professional environment founded upon the highest ethical, moral, and Christian principles reflecting respect, support, and trust for our customers, our suppliers, our employees and their families."

32.     The Hahns have always operated Conestoga in accordance with their Mennonite beliefs including but not limited to the structuring of their health insurance plan.

33.     As a result of their deeply held beliefs both Conestoga and the Hahn's make substantial contributions to a variety of charitable and community organizations every year above and beyond their giving to the individual churches they attend.

## II.     Conestoga's Health Insurance Plan

34.     As part of fulfilling their vision and mission statement and religious beliefs and commitments, Plaintiffs provide generous health insurance for their employees.

35.     Conestoga has approximately 950 full-time employees throughout its various locations in the United States.

36.     The health insurance plan year for Conestoga begins on January 1 of each year, with the next plan year starting on January 1, 2013.

37.     The health insurance plan that will be effective January 1, 2013 provides for abortifacient drugs and contraception with an abortifacient effect.

38.     To implement the plan for the new year beginning January 1, 2013, and/or make substantial plan changes as a result of the Mandate, Plaintiffs must make logistical arrangements on or before December 31, 2012 in order for the plan to be arranged, reviewed, finalized and communicated to employees prior to the plan year's January 1, 2013 start date.

## III.     The PPACA and Defendants' Mandate Thereunder

39.     Under the PPACA, employers with over 50 full-time employees are required to provide a certain minimum level of health insurance to their employees.

9

40.     Nearly all such plans must include "preventive services," which must be offered with no cost-sharing by the employee.

41.     On February 10, 2012, the Department of Health and Human Services finalized a rule (previously referred to in this Complaint as the Mandate) that imposes a definition of preventive services to include all FDA approved "contraceptive" drugs, surgical sterilization, and education and counseling for such services.

42.     This final rule was adopted without giving due weight to the tens of thousands of public comments submitted to HHS in opposition to the Mandate.

43.     In the category of "FDA approved contraceptives" included in this Mandate are several drugs or devices that may cause the demise of an already conceived but not yet attached human embryo, such as "emergency contraception" or "Plan B" drugs (the so called "morning after" pill).

44.     The FDA approved in this same category a drug called "ella" (the so called "week after" pill), which studies show can function to kill embryos even after they have attached to the uterus, by a mechanism similar to the abortion drug RU-486.

45.     The manufacturers of some such drugs, methods and devices in the category of "FDA approved contraceptive methods" indicate that they can function to cause the demise of an early human embryo.

46.     The Mandate also requires group health care plans to pay for the provision of counseling, education, and other information concerning contraception (including devices and drugs such as "Plan B" and "ella" that cause early abortions or harm to human embryos) for all women beneficiaries who are capable of bearing children.

10

47.     The Mandate applies to the first health insurance plan year beginning after August 1, 2012.

48.     Thus Plaintiffs are, absent relief from this Court, subject to the Mandate's requirement of coverage of the above described items starting with Conestoga's January 1, 2013 plan.

49.     The Mandate makes little or no allowance for the religious freedom of entities and individuals, including Plaintiffs, who object to paying for or providing insurance coverage for such items.

50.     An entity cannot freely avoid the Mandate by simply refusing to provide health insurance to its employees, because the PPACA imposes monetary penalties on entities that would so refuse.

51.     The exact magnitude of these penalties may vary according to the complicated provisions of the PPACA, but the fine is approximately $2,000 per employee per year.

52.     PPACA also imposes monetary penalties if Conestoga were to continue to offer its health insurance plan to employees but continued omitting abortifacients and contraceptives with an abortifacient effect.

53.     The exact magnitude of these penalties may vary according to the complicated provisions of the PPACA, but the fine is approximately $100 per day per employee, with minimum amounts applying in different circumstances.

54.     If Plaintiffs do not submit to the Mandate they also trigger a range of enforcement mechanisms that exist under ERISA, including but not limited to civil actions by the Secretary of Labor or by plan participants and beneficiaries, which would include but not be limited to relief

in the form of judicial orders mandating that Plaintiffs violate their sincerely held religious beliefs and provide coverage for items to which they religiously object.

55.    The Mandate applies not only to sponsors of group health plans like Plaintiffs, but also to issuers of insurance. Accordingly, Plaintiffs cannot avoid the Mandate by shopping for an insurance plan that accommodates their right of conscience, because the Administration has intentionally foreclosed that possibility.

56.    The Mandate offers the possibility of a narrow exemption to religious employers, but only if they meet all of the following requirements:

(1) "The inculcation of religious values is the purpose of the organization";

(2) "The organization primarily employs persons who share the religious tenets of the organization";

(3) "The organization serves primarily persons who share the religious tenets of the organization"; and

(4) The organization is a church, an integrated auxiliary of a church, a convention or association of churches, or is an exclusively religious activity of a religious order, under Internal Revenue Code 6033(a)(1) and (a)(3)(A).

57.    Plaintiffs are deemed not "religious" enough by the Defendants under this definition in several respects, including but not limited to because they have purposes other than the "inculcation of religious values," they do not primarily hire or serve Mennonites, and because Conestoga is not a church, integrated auxiliary of a particular church, convention or association of a church, or the exclusively religious activities of a religious order.

58.    The Mandate fails to protect the statutory and constitutional conscience rights of religious Americans like Plaintiffs even though those rights were repeatedly raised in the public comments.

12

59.     The Mandate requires that Plaintiffs provide coverage for abortifacient methods and contraception with a possible abortifacient effect and counseling related to the same, against their conscience and in violation of their religious beliefs, in a manner that is contrary to law.

60.     The Mandate constitutes government-imposed coercion on Plaintiffs to change or violate their sincerely held religious beliefs.

61.     The Mandate exposes Plaintiffs to substantial fines for refusal to change or violate their religious beliefs.

62.     Plaintiffs have a sincere conscientious religious objection to providing coverage for abortifacients and contraception with an abortifacient effect and related education and counseling.

63.     The Mandate does not apply equally to all religious adherents or groups.

64.     PPACA and the Mandate are not generally applicable because they provide for numerous exemptions from their rules.

65.     For instance, the Mandate does not apply to members of a "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds. See 26 U.S.C. §§ 5000A(d)(2)(a)(i) and (ii).  Plaintiffs do not meet this exemption.

66.     In addition, as described above, the Mandate exempts certain churches narrowly considered to be religious employers.

67.     Furthermore, the PPACA creates a system of individualized exemptions because under the PPACA's authorization the federal government has granted discretionary compliance waivers to a variety of businesses for purely secular reasons.

68.     The Mandate does not apply to employers with preexisting plans that are "grandfathered."

69.     Conestoga's plan is not grandfathered under PPACA, nor will its plan year that starts on January 1, 2013 have grandfathered status.

70.     The Mandate does not apply through the employer mandate to employers having fewer than 50 full-time employees.

71.     President Obama held a press conference on February 10, 2012, and later (through Defendants) issued an "Advanced Notice of Proposed Rulemaking" ("ANPRM") on March 21, 2012 (77 Fed. Reg. 16501–08), claiming to offer a "compromise" under which some religious non-profit organizations not meeting the above definition would still have to comply with the Mandate, but by means of the employer's insurer offering the employer's employees the same coverage for "free."

72.     This "compromise" is not helpful to Plaintiffs because, among other reasons, Conestoga is not a non-profit entity.

73.     The ANPRM is neither a rule, a proposed rule, nor the specification of what a rule proposed in the future would actually contain.  It in no way changes or alters the final status of the February 15, 2012 Mandate.  It does not even create a legal requirement that Defendants change the Mandate at some time in the future.

74.     On February 10, 2012 a document was also issued from the Center for Consumer Information and Insurance Oversight (CCIIO), Centers for Medicare & Medicaid Services (CMS), of HHS, entitled "Guidance on the Temporary Enforcement Safe Harbor for Certain Employers, Group Health Plans and Group Health Insurance Issuers with Respect to the

Requirement to Cover Contraceptive Services Without Cost Sharing Under Section 2713 of the Public Health Service Act, Section 715(a)(1) of the Employee Retirement Income Security Act, and Section 9815(a)(1) of the Internal Revenue Code."

75.     Under this "Guidance," an organization that truthfully declares "I certify that the organization is organized and operated as a non-profit entity; and that, at any point from February 10, 2012 onward, contraceptive coverage has not been provided by the plan, consistent with any applicable State law, because of the religious beliefs of the organization," and that provides a specified notice to plan participants, will not "be subject to any enforcement action by the Departments for failing to cover recommended contraceptive services without cost sharing in non-exempted, non-grandfathered group health plans established or maintained by an organization, including a group or association of employers within the meaning of section 3(5) of ERISA, (and any group health insurance coverage provided in connection with such plans)," until "the first plan year that begins on or after August 1, 2012."

76.     The "Guidance" categorically disqualifies Plaintiffs from making use of this "extra year" because, among other reasons, Conestoga is not a non-profit entity.

77.     Therefore while President Obama's "compromise" and guidance purport to accommodate the religious beliefs of even more groups beyond the Mandate's initial exemption for churches, none of these measures will stop the Mandate from imposing its requirements on Plaintiffs' plan year beginning January 1, 2013.

78.     The Mandate will have a profound and adverse effect on Plaintiffs and how they negotiate contracts and compensate their employees.

79.    Any alleged interest Defendants have in providing free FDA-approved contraception and abortifacients without cost-sharing could be advanced through other, more narrowly tailored mechanisms that do not burden the religious beliefs of Plaintiffs and do not require them to provide or facilitate coverage of such items through their health plan.

80.    Without injunctive and declaratory relief as requested herein, including preliminary injunctive relief issued on or before December 31, 2012, Plaintiffs are suffering and will continue to suffer irreparable harm.

81.    Plaintiffs have no adequate remedy at law.

IV.    **Additional Factual Allegations**

82.    Conestoga's plan covers pregnancy related expenses, such as prenatal and post partum care, delivery, newborn care, routine GYN care including Pap test, mammogram annual screening, well woman visits, screening for gestational diabetes, human papilloma virus testing, human immunodeficiency virus screening and breast feeding support and supplies among other things. The plan does not consider pregnancy an excluded pre-existing condition.

83.    Conestoga's plan has a wellness program for employees which includes promoting the health of women during and after pregnancy.

84.    Conestoga's plan is not grandfathered under PPACA because for the January 2011 plan year, Conestoga did not provide notification to plan participants that its plan was considered grandfathered (because the plan was not considered grandfathered).

85.    It would significantly injure Plaintiffs and their employees to require them to wait beyond December 31, 2012 to know whether their January 1, 2013 health plan will cover the items required by the Mandate.

16

86.    Plaintiffs' decision on the plan's terms must be made based on knowing what items the plan will or will not cover and what levels of employee contributions will be needed to meet Conestoga's budget based on what services and supplies are covered by the plan.

87.    If Plaintiff's were forced to add no cost sharing "contraceptives" including those that act to destroy early embryos, as well as patient education and counseling in facilitation of the aforementioned, all of which are required by the Mandate, Plaintiffs would have to take that inclusion into account at the time they decide what coverages and employee contributions the budget of Conestoga can afford.

88.    Adding the Mandated items will require Conestoga to either eliminate coverage of other services included in the plan, increase employee contributions or possibly both.

89.    Therefore, if Plaintiffs are not afforded prompt injunctive relief against the Mandate, they and their employees face imminent and irreparable injury.

90.    On October 31, 2012, the Board of Directors adopted "The Hahn Family Statement on the Sanctity of Human Life." The statement provides that:

"The Hahn family believes that the Bible is the inspired, infallible and authoritative written Word of God, the one and only eternal God.

Found in the Bible, Exodus 20:13 (NIV) as one of the "Ten Commandments", God commands, "You shall not kill."

Found in the Bible, Psalms, 139:13-16 (NIV), the writer acknowledges God in how he was made and says…" [13]For you created my inmost being; you knit me together in my mother's womb.  [14]I will praise you because I am fearfully and wonderfully made; your works are wonderful, I know that full well.  [15]My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. [16]Your eyes saw my unformed body; all the days obtained for me were written in your book before one of them came to be."

The Hahn Family believes that human life begins at conception (at the point where an egg and sperm unite) and that it is a sacred gift from God and only God has the right to

17

terminate human life.  Therefore it is against our moral conviction to be involved in the termination of human life through abortion, suicide, euthanasia, murder, or any other acts that involve the deliberate taking of human life."

### FIRST CLAIM FOR RELIEF
### Violation of the Religious Freedom Restoration Act
### 42 U.S.C. § 2000bb

91.     Plaintiffs restate all matters set forth in the preceding paragraphs and incorporate them herein by reference.

92.     Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortifacients and contraception with a possible abortifacient effect as well as education and counseling promoting the same in their employee health plan.

93.     When Plaintiffs comply with Mennonite and personally held ethical and moral teachings on abortifacients and with their sincerely held religious beliefs, they exercise religion within the meaning of the Religious Freedom Restoration Act.

94.     The Mandate imposes a substantial burden on Plaintiffs' religious exercise and coerces them to change or violate their sincerely held religious beliefs.

95.     The Mandate chills Plaintiffs' religious exercise within the meaning of RFRA.

96.     The Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise.

97.     The Mandate furthers no compelling governmental interest and is not narrowly tailored to any compelling governmental interest.

98.     The Mandate is not the least restrictive means of furthering Defendants' stated interests.

99.     The Mandate violates RFRA.

18

WHEREFORE, the Plaintiffs pray for the relief set forth below in the prayer for relief.

## SECOND CLAIM FOR RELIEF
### Violation of Free Exercise Clause of the First Amendment to the United States Constitution

100.    Plaintiffs restate all matters set forth in the preceding paragraphs and incorporate them herein by reference.

101.    Plaintiffs' sincerely held religious beliefs prohibit them from providing coverage for abortifacients, contraception with even a possible abortifacient effect, and education and counseling promoting the same in their employee health plan.

102.    When Plaintiffs comply with Mennonite and personally held ethical and moral teachings on abortifacients and with their sincerely held religious beliefs, they exercise religion within the meaning of the Free Exercise Clause.

103.    The Mandate is not neutral and is not generally applicable.

104.    Defendants have created categorical exemptions and individualized exemptions to the Mandate.

105.    The Mandate furthers no compelling governmental interest.

106.    The Mandate is not the least restrictive means of furthering Defendants' stated interests.

107.    The Mandate coerces Plaintiffs to change or violate their sincerely held religious beliefs.

108.    The Mandate chills Plaintiffs' religious exercise.

109.    The Mandate exposes Plaintiffs to substantial fines and/or financial burdens for their religious exercise.

19

110.    The Mandate imposes a substantial burden on Plaintiffs' religious exercise.

111.    The Mandate is not narrowly tailored to any compelling governmental interest.

112.    By design, Defendants framed the Mandate to apply to some religious Americans but not to others, resulting in discrimination among religions.

113.    Defendants have created exemptions to the Mandate for some religious believers but not others based on characteristics of their beliefs and their religious exercise.

114.    Defendants designed the Mandate, the religious exemption thereto, and the "compromise" and guidance allowances thereto, in a way that makes it impossible for Plaintiffs and other similar religious Americans to comply with their sincerely held religious beliefs.

115.    Defendants promulgated both the Mandate and the religious exemption/allowances with the purpose and intent to suppress the religious exercise of Plaintiffs and others.

116.    The Mandate violates Plaintiffs' rights secured to them by the Free Exercise Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below in the prayer for relief.

**THIRD CLAIM FOR RELIEF**
**Violation of the Establishment Clause of the**
**First Amendment to the United States Constitution**

117.    Plaintiffs restate all matters set forth in the preceding paragraphs and incorporate them herein by reference.

118.    The First Amendment's Establishment Clause prohibits the establishment of any religion and/or excessive government entanglement with religion.

20

119.    To determine whether religious persons or entities like Plaintiffs are required to comply with the Mandate, are required to continue to comply with the Mandate, are eligible for an exemption or other accommodations, or continue to be eligible for the same, Defendants must examine the religious beliefs and doctrinal teachings of persons or entities like Plaintiffs.

120.    Obtaining sufficient information for the Defendants to analyze the content of Plaintiffs' sincerely held religious beliefs requires ongoing, comprehensive government surveillance that impermissibly entangles Defendants with religion.

121.    The Mandate discriminates among religions and among denominations, favoring some over others, and exhibits a hostility to religious beliefs.

122.    The Mandate adopts a particular theological view of what is acceptable moral complicity in provision of abortifacients and imposes it upon all people of religion who must either conform their consciences or suffer penalty.

123.    The Mandate violates Plaintiffs' rights secured to them by the Establishment Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below in the prayer for relief.

### FOURTH CLAIM FOR RELIEF
### Violation of the Free Speech Clause of the First Amendment
### to the United States Constitution

124.    Plaintiffs restate all matters set forth in the preceding paragraphs and incorporate them herein by reference.

125.    Defendants' requirement of provision of insurance coverage for education and counseling regarding contraception with an abortifacient effect and other abortion causing drugs forces Plaintiffs to speak in a manner contrary to their religious beliefs.

21

126.   Defendants have no narrowly tailored compelling interest to justify this compelled speech.

127.   The Mandate violates Plaintiffs' rights secured to them by the Free Speech Clause of the First Amendment of the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below in the prayer for relief.

### FIFTH CLAIM FOR RELIEF
#### Violation of the Due Process Clause of the
#### Fifth Amendment to the United States Constitution

128.   Plaintiffs restate all matters set forth in the preceding paragraphs and incorporate them herein by reference.

129.   Because the Mandate sweepingly infringes upon religious exercise and speech rights that are constitutionally protected, it is unconstitutionally vague and overbroad in violation of the due process rights of Plaintiffs and other parties not before the Court.

130.   Persons of common intelligence must necessarily guess at the meaning, scope, and application of the Mandate and its exemptions.

131.   This Mandate lends itself to discriminatory enforcement by government officials in an arbitrary and capricious manner.

132.   The Mandate vests Defendants with unbridled discretion in deciding whether to allow exemptions to some, all, or no organizations meeting whatever definition of "religious employers" it decides to craft.

133.   This Mandate is an unconstitutional violation of Plaintiffs' due process rights under the Fifth Amendment to the United States Constitution.

WHEREFORE, the Plaintiffs pray for the relief set forth below in the prayer for relief.

## SIXTH CLAIM FOR RELIEF
### Violation of the Administrative Procedure Act

134.   Plaintiffs restate all matters set forth in the preceding paragraphs and incorporate them herein by reference.

135.   Because they did not give proper notice and an opportunity for public comment, Defendants did not take into account the full implications of the regulations by completing a meaningful consideration of the relevant matter presented.

136.   Defendants did not consider or respond to the voluminous comments they received in opposition to the interim final rule.

137.   Therefore, Defendants have taken agency action not in accordance with procedures required by law, and Plaintiffs are entitled to relief pursuant to 5 U.S.C. § 706(2)(D).

138.   In promulgating the Mandate, Defendants failed to consider the constitutional and statutory implications of the Mandate on Plaintiffs and similar persons.

139.   Defendants' explanation (and lack thereof) for its decision not to exempt Plaintiffs and similar religious organizations from the Mandate runs counter to the evidence submitted by religious Americans during the comment period.

140.   Thus, Defendants' issuance of the Mandate was arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A) because the Mandate fails to consider the full extent of its implications and it does not take into consideration the evidence against it.

141.   As set forth above, the Mandate violates RFRA and the First and Fifth Amendments.

142.   The Mandate is also contrary to the provisions of the PPACA which states that "nothing in this title"—i.e., title I of the Act, which includes the provision dealing with

23

"preventive services"—"shall be construed to require a qualified health plan to provide coverage of [abortion] services . . . as part of its essential health benefits for any plan year." Section 1303(b)(1)(A). Some drugs included as "FDA approved contraceptives" under the Mandate cause abortions by causing the demise of human embryos before and/or after attachment to the uterus.

143.   The Mandate is also contrary to the provisions of the Weldon Amendment of the Consolidated Security, Disaster Assistance, and Continuing Appropriations Act of 2009, Public Law 110 329, Div. A, Sec. 101, 122 Stat. 3574, 3575 (Sept. 30, 2008), which provides that "[n]one of the funds made available in this Act [making appropriations for Defendants Department of Labor and Health and Human Services] may be made available to a Federal agency or program . . . if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions."

144.   The Mandate also violates the provisions of the Church Amendment, 42 U.S.C. § 300a-7(d), which provides that "No individual shall be required to perform or assist in the performance of any part of a health service program or research activity funded in whole or in part under a program administered by the Secretary of Health and Human Services if his performance or assistance in the performance of such part of such program or activity would be contrary to his religious beliefs or moral convictions."

145.   The Mandate is contrary to existing law and is in violation of the APA under 5 U.S.C. § 706(2)(A)f.

WHEREFORE, the Plaintiffs pray for the relief set forth below in the prayer for relief.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request the following relief:

146.   That this Court enter a judgment declaring the Mandate and its application to Plaintiffs and others similarly situated but not before the Court to be an unconstitutional violation of their rights protected by RFRA, the Free Exercise, Establishment, and Free Speech Clauses of the First Amendment to the United States Constitution, the Due Process Clause of the Fifth Amendment to the United States Constitution, and the Administrative Procedure Act, and therefore invalid in any way applicable to them;

147.   That this Court enter a preliminary and a permanent injunction prohibiting Defendants from applying the Mandate to Plaintiffs, their insurance carrier, or any person similarly situated, but not before the Court in a way that substantially burdens the religious belief of Plaintiffs or any person in violation of RFRA and the Constitution, and prohibiting Defendants from continuing to illegally discriminate against Plaintiffs and others not before the Court by requiring them to provide health insurance coverage for abortifacients and contraception with an abortifacient effect and education and counseling promoting the same to their employees;

148.   That this Court award Plaintiffs court costs and reasonable attorney's fees, as provided by the Equal Access to Justice Act and RFRA (as provided in 42 U.S.C. § 1988);

149.   That this Court grant such other and further relief as to which the Plaintiffs may be entitled.

150.    Plaintiffs demand a jury trial on all issues qualified for trial.


Respectfully submitted this 4th day of December, 2012.



*Attorneys for Plaintiffs*:




Randall L. Wenger, Esquire
PA Attorney ID Number: 86537
Independence Law Center
23 North Front Street
Harrisburg, PA 17101
717-545-0600 (phone)
717-545-8107 (fax)
rwenger@indlawcenter.org

Charles W. Proctor, III, Esquire
PA Attorney ID Number:     23266
Law Offices of Proctor Lindsay & Dixon
1204 Baltimore Pike, Suite 200
Chadds Ford, PA 19317
610-361-8600 (phone)
610-361-8843 (fax)
cproctor@cplaw1.com

## VERIFICATION OF VERIFIED COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746‡

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed on _Nov 30 -2012_

_Norman Hahn_
Norman Hahn

27

## VERIFICATION OF VERIFIED COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746[‡]

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed on ___November 30, 2012___

_____
Norman Lemar Hahn

28

## VERIFICATION OF VERIFIED COMPLAINT
## PURSUANT TO 28 U.S.C. § 1746[‡]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on _November 30, 2012_

_[signature]_
Anthony H. Hahn

29